**Lawrence MAYNOR, Appellant,**

v.

**Rogers C. B. MORTON, Secretary, Department of the Interior.**

**No. 73–2109.**

United States Court of Appeals, District of Columbia Circuit.

Argued 21 Nov. 1974.

Decided 4 April 1975.

---

Thomas N. Tureen, Calais, Me., with whom L. Graeme Bell, III, Washington, D. C., was on the brief for appellant.

John J. Zimmerman, Atty., Dept. of Justice, with whom Wallace H. Johnson, Asst. Atty. Gen., Carl Strass and Anthony S. Borwick, Attys., Dept. of Justice, were on the brief for appellee. Edmund B. Clark, Washington, D. C., also entered an appearance for appellee.

Before DANAHER, Senior Circuit Judge, WILKEY, Circuit Judge, and JUSTICE,* United States District Court Judge for the Eastern District of Texas.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

This is an appeal from an order granting summary judgment for the Secretary of the Interior and dismissing the complaint of appellant Maynor. Maynor filed an action for declaratory judgment under 28 U.S.C. §§ 1331 and 2201 to establish his eligibility for benefits under the Indian Reorganization Act (IRA).[1] In addition to the IRA, one other statute

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. 25 U.S.C. § 461 et seq. (1970).

is involved, the so-called Lumbee Act of 7 June 1956.[2] Despite the Indian law and lore cited to us by the parties, we think the issue is simply a matter of statutory interpretation.[3] Finding that the District Court erred in granting summary judgment for the defendant Secretary, we reverse and remand to the District Court with instructions to enter the declaratory judgment sought by the plaintiff-appellant Maynor.

## I. Background Facts

■ Maynor is one of some 40,000 Indians who live in and around Robeson County in North Carolina. They are now known as the "Lumbee Indians," but prior to 1956 they had no tribal name. In 1934 the Indian Reorganization Act (IRA) was passed. The pertinent provision of this comprehensive Act is the clause defining the term "Indian":

> All persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, *and shall further include all other persons of one-half or more Indian blood.*[4]

Although the IRA was primarily designed for tribal Indians,[5] and neither Maynor nor his relatives had any tribal designation, organization, or reservation at that time, it is clear from the language of the statute that some benefits of the Act were also open to any nonreservation Indian who could prove that he possessed at least one-half Indian blood.[6] Among these benefits was the right to petition the Secretary to establish a reservation for such individuals, which, if granted, would afford them access to a wide range of federal Indian services (as members of a recognized Indian group on a reservation).[7]

Following enactment of the IRA in 1934, plaintiff Maynor and 208 other persons residing in Robeson County petitioned the Secretary for recognition as persons of one-half or more Indian blood. The Department of the Interior sent a team of anthropologists and other specialists to determine the quantum of Indian blood of each applicant. After extensive study, in 1938 a total of only 22 applications including Maynor's, were approved.

Maynor and the other 21 were informed by the Department that they were "entitled to benefits established by the Indian Reorganization Act. *Please note* that no other benefits are involved. These people do not obtain tribal status or any rights or privileges in any Indian

---

**2.** Pub.L.No. 84–570, 70 Stat. 254.

**3.** This makes unnecessary any consideration of the question whether the subsequent statute could lawfully have divested Maynor of any rights conferred on him by the IRA of 1934 and the Department of the Interior certification as an "Indian."

**4.** 25 U.S.C. § 479.

**5.** Only recently in Morton v. Mancari, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974), the Supreme Court referred to "the sweeping Indian Reorganization Act of 1934," and stated that "the overriding purpose of that particular Act was to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government, both politically and economically." *Id.* at 542, 94 S.Ct. at 2478.

**6.** We find singularly unpersuasive the Government's argument that the IRA cannot consti-

tutionally confer benefits on non-reservation Indians. (Government Br. at 7–9.) Not only does this contention run counter to the position taken by the Secretary of the Interior in 1938 (see text accompanying note 8 *infra),* but at no point was it raised by the Department during its two-year consideration of the appellant's petition (see text accompanying note 11 *infra)* or by the Government in the District Court proceedings. Thus, even if we found merit in the argument, raised for the first time on appeal, we would not consider it in reaching our decision.

It should be noted that as little as one-quarter Indian blood suffices to confer many IRA benefits to persons living on a reservation.

**7.** This and other benefits available under the IRA to non-reservation Indians were first detailed in a memorandum, dated 8 April 1935, to the Commissioner of Indian Affairs from then Assistant Solicitor Felix S. Cohen, who later authored the treatise Federal Indian Law (1942). Appendix at 29–30.

tribe." [8] Apparently dissatisfied with the tedious (and only ten percent productive) method of securing Indian status by individual blood and lineage examination, another group of Robeson County Indians (not including plaintiff Maynor) attempted a legislative solution. The result was the Lumbee Act of 7 June 1956,[9] which provided that the Indians in Robeson and surrounding counties would be known as "Lumbee Indians." On the recommendation of the Department of the Interior, however, language was included in the Act which provided:

> Nothing in this Act shall make such Indians eligible for any services performed by the United States for Indians because of their status as Indians, and none of the statutes of the United States which affect Indians because of their status as Indians shall be applicable to the Lumbee Indians.[10]

From this qualifying clause arises the single problem of this lawsuit.

In Congress' consideration of the Lumbee Act of 1956 no notice was taken or mention made of the 22 individuals who had been certified in 1938 as Indians under the IRA of 1934. The Federal Government appears to have all but forgotten them when in 1971 the plaintiff Maynor and others of the group of 22 petitioned the Secretary of the Interior to establish a reservation for them as certified Indians. From the content of several letters issued by the Bureau of Indian Affairs,[11] it appears that their request somewhat disconcerted the Department. The ultimate answer of the Department of the Interior, however, was that the 22 individuals were not eligible for benefits under the IRA. This conclusion was based entirely on a legal opinion of the Deputy Solicitor, dated 28 November 1972, to the effect that the clause concerning eligibility for federal Indian services, which the Department had secured as an addition to the Lumbee Act of 1956, terminated the rights which the petitioners had obtained in 1938 by virtue of their certification as Indians of more than fifty percent blood.

## II. Statutory Interpretation

On the plain language of the statute, we think the Secretary and his Deputy Solicitor erred. The Interior-inspired clause says, "Nothing in this Act shall make such Indians eligible for any services . . . because of their status as Indians." To our minds the key phrase is "[n]othing in this Act." The Secretary argues:

> The meaning of the Lumbee Act language could not be more plain. The Lumbee Indians are to receive no special Indian benefits, the purpose of the legislation being solely to recognize one name for these people.[12]

True, the limited purpose of the legislation appears to be to designate this group of Indians as "Lumbee Indians"

---

8. Appendix at 20. Fn. 2.

9. The entire text of the Act reads:

   *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Indians now residing in Robeson and adjoining counties of North Carolina, originally found by the first white settlers on the Lumbee River in Robeson County, and claiming joint descent from remnants of early American colonists and certain tribes of Indians originally inhabiting the coastal regions of North Carolina, shall, from and after the ratification of this Act, be known and designated as Lumbee Indians of North Carolina and shall continue to enjoy all rights, privileges, and immunities enjoyed by them as citizens of the State of North Carolina and of the United States as they enjoyed before the enactment of this Act, and shall continue to be subject to all the obligations and duties of such citizens under the laws of the State of North Carolina and the United States. Nothing in this Act shall make such Indians eligible for any services performed by the United States for Indians because of their status as Indians, and none of the statutes of the United States which affect Indians because of their status as Indians shall be applicable to the Lumbee Indians.

   Sec. 2. All laws and parts of laws in conflict with this Act are hereby repealed. 70 Stat. at 255.

10. 70 Stat. at 255.

11. Appendix at 33–38.

12. Government Br. at 18.

and recognize them as a specific group. Moreover, Congress was very careful not to confer *by this legislation* any special benefits on these people so designated as Lumbee Indians. But we do not see that Congress manifested any intention whatsoever to take away any rights conferred on any individuals by any *previous* legislation.

■ Plaintiff Maynor is asking for a declaratory judgment of his rights under the Indian Reorganization Act of 1934, pursuant to which he was certified by the Department of the Interior as an Indian because extensive investigation had determined that he met the statutory definition of "Indian," whether he lived on a reservation or was a member of a tribe. In 1934–38 plaintiff Maynor was not a "Lumbee Indian," because the Lumbee Indians were not a legally recognized group. He was simply certified as an "Indian," and it is as such that he seeks a declaratory judgment of his rights.

There is nothing in the background of the Lumbee Act, in the debates, or in the committee reports which would indicate that Congress had any desire to take away any rights from persons such as appellant Maynor who may have been granted such rights by prior legislation. Congress was simply unaware of the existence of 22 persons in the Robeson County area certified by the Department of the Interior as Indians of more than fifty percent Indian blood under the IRA of 1934. Congress, being oblivious of these people and their rights, certainly cannot be supposed to have intended to deprive them of those rights without mention of the subject.

The whole purpose of this final clause of the one paragraph operative portion of the Lumbee Act was simply to leave the rights of the "Lumbee Indians" unchanged. This is the plain import of the Department of the Interior recommendation on the bill:

> If your committee should recommend the enaction of the bill, it should be amended to indicate clearly that it [the Act] does not make these persons eligible for services provided through the Bureau of Indian Affairs to other Indians.[13]

If 22 out of the 40,000 persons now known as Lumbee Indians had secured certain rights by special designation in 1938, there is no intent manifest either in the letter of the Department of the Interior or in the final language of the statute to alter those rights.[14]

■ In the final analysis, the argument of the Secretary rests upon a re-

---

**13.** H.R.Rep.No. 1654, 84th Cong., 2d Sess. (1956), U.S.Code Cong. & Admin.News 1956, p. 2715.

**14.** This view is buttressed by the dialogue on the floor of the House between the sponsor of the bill, Representative Carlyle of North Carolina, and Representative Ford of Michigan:

> The SPEAKER. Is there objection to the present consideration of the bill?
>
> Mr. FORD. Mr. Speaker, reserving the right to object, I should like to ask the author of the bill, the gentleman from North Carolina, *whether* or not *this bill, if enacted,* would in any way whatsoever commit the Federal Government in the future to the furnishing of services or monetary sums?
>
> Mr. CARLYLE. Mr. Speaker, I am happy to say that *the bill* does not provide for that nor is it expected that *it* will cost the Government one penny.
>
> Mr. FORD. There is no obligation involved, as far as the Federal Government is concerned, if this proposed legislation is approved?
>
> Mr. CARLYLE. None whatsoever.
>
> Mr. FORD. *It simply provides for the change of the name?*
>
> Mr. CARLYLE. *That is all.*

102 Cong.Rec. 2900 (1956).

To explain the addition of the last clause the Senate Committee stated in its report, "The committee has amended the bill to clearly indicate that the Lumbee Indians will not be eligible for any services provided through the Bureau of Indian Affairs to other Indians." (S.Rep.No. 2012, 84th Cong., 2d Sess. (1956), U.S.Code Cong. & Admin.News 1956, p. 2715. This shorthand statement of the purpose of the amendment, of course, does not contain the introductory clause of the amending language, "Nothing in this Act shall make . . . . .."

peal by implication, or inadvertence—a position decidedly not favored in the law. In rejecting its application here we find illumination in the recent opinion of Mr. Justice Blackmun in Morton v. Mancari,[15] a decision which was not available to the District Judge when he granted summary judgment for the defendant. There the question was whether the 1972 Equal Employment Opportunity Act repealed by implication the Indian preference of the Indian Reorganization Act of 1934. A three-judge District Court had held that the Indian preference was repealed, but the Supreme Court said,

> Appellees encounter head-on the "cardinal rule . . . that repeals by implication are not favored." [Cites] They and the District Court read the congressional silence as effectuating a repeal by implication. There is nothing in the legislative history, however, that indicates affirmatively any congressional intent to repeal the 1934 preference. . . .

> This is a prototypical case where an adjudication of repeal by implication is not appropriate. . . .

> In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable. . . .

> . . . . . .

> The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. "When there are two acts upon the same subject, the rule is to give effect to both if possible . . . . The in-

tention of the legislature to repeal 'must be clear and manifest.' "[16]

Here, as in *Mancari,* the Secretary of the Interior was not at liberty to pick and choose among Congressional enactments. If he had two Acts upon the same subject, he could have given effect to both, as we do here, by simply recognizing that whatever rights were acquired by plaintiff Maynor and the other 21—who were certified by the Department of the Interior in 1938 as "Indians" under the IRA of 1934—were not abrogated when in 1956 a group of plaintiff's neighbors secured legislative recognition for the entire group of "Lumbee Indians," with the proviso that this recognition in itself would not entitle them to any Indian benefits. Certainly no implication of a repeal of the certified Indian status of Maynor arises by such legislation conferring a tribal name on a group of North Carolina Indians, even if the group included the appellant.

The whole purpose of the clause, from whence arises the issue in this case, was simply to make sure that a simple statute granting the name "Lumbee Indian" to a group of Indians, which hitherto had not had such designation legally, was not used in and of itself to acquire benefits from the United States Government. Plaintiff here is not seeking a declaration of eligibility for any benefits by virtue of his being a "Lumbee Indian" under the 1956 Act. He predicates his claim to a declaration of rights on his certification by the same Department of the Interior in 1938 that he is an Indian of more than fifty percent blood, and therefore an Indian as defined in the IRA of 1934. It is under this Act of 1934 that he lays claim to whatever rights he might have. We think the plaintiff-appellant has made his case for declaratory judgment, and we therefore remand to the District Court for entry of a judgment in accordance therewith.

Reversed and remanded.

15. 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

16. *Id.* at 549–51, 94 S.Ct. at 2482.